UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MURRIEL L. H.,<br><br>          Plaintiff,<br><br>      v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>          Defendant. | Case No.  EDCV 21-01997-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.  INTRODUCTION**

Plaintiff Murriel L. H.[1] ("Plaintiff") challenges the Commissioner's denial of her disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons stated below, the Commissioner's decision is AFFIRMED.

**II.  SUMMARY OF PROCEEDINGS**

On April 14, 2020, Plaintiff filed an application for DIB alleging a disability onset date of February 27, 2018.  (Administrative Record ("AR") 197.)  The Commissioner denied Plaintiff's application by initial determination on August 8,

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

2020, and upon reconsideration on October 28, 2020. (AR 67-83, 85-100.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 31, 2020. (AR 112-13.) A hearing was held on April 14, 2021. (AR 33-66.) The ALJ issued a decision denying Plaintiff's application on April 27, 2021. (AR 12-32.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Plaintiff filed this action on September 23, 2021. (Dkt. No. 1.)

To determine whether Plaintiff was disabled under the Social Security Act, the ALJ followed the familiar five-step sequential evaluation process. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 27, 2018. (AR 17.) At **step two**, the ALJ found that Plaintiff has the severe impairments of "cervicalgia and cervical myofascial pain; bilateral shoulder myofascial pain; migraine headaches; depressive disorder; and anxiety disorder." (AR 17-18.) At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (AR 18-20.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except Plaintiff

> [C]an occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds; can stand and walk six hours in an eight-hour day; can sit six hours in an eight-hour day; can occasionally climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can be exposed to at most moderate noise intensity levels, as that term is defined in the Selected Characteristics of Occupations (i.e., a business office where typewriters are used, department store, grocery store, light traffic, or a fast-food restaurant at off hours); cannot be exposed to bright lights or bright sunlight; can follow simple instructions and complete simple

> tasks for two-hour increments with normal breaks; cannot have customer-service interaction with the public; and can have frequent interaction with coworkers and supervisors, but cannot perform tandem tasks or work as part of a team.

(AR 20-21.) At **step four**, the ALJ found that Plaintiff is unable to perform any past relevant work as defined in 20 C.F.R. § 404.1565. (AR 26.) At **step five**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 26.) Accordingly, the ALJ determined that Plaintiff has not been under a disability since February 27, 2018. (AR 28.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed.2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."

*Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises two issues for review: (1) whether the ALJ properly assessed her mental health impairments at step three; and (2) whether the ALJ properly evaluated the medical opinions related to her mental health impairments. (Joint Stipulation ("JS") at 4, 18.)

### A. The ALJ's Determination at Step Three Is Supported By Substantial Evidence

#### 1. Applicable Legal Standards

At step three, the ALJ considers the medical severity of a claimant's impairments to determine whether the impairments meet or equal the criteria of any of the impairments listed in the Listings of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525; *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999). The Listings describe the impairments considered to be severe enough to prevent an individual from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). Each impairment is described in terms of the "objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *cf. Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013)

("Listed impairments are purposefully set at a high level of severity because the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." (citation and internal quotations omitted)).

A "special technique" is used to evaluate the severity of mental impairments. 20 C.F.R. § 404.1520a(a). First, the ALJ determines whether a claimant has a medically determinable mental impairment(s), then the ALJ rates the degree of functional limitation in four broad areas based on a five-point scale. 20 C.F.R. §§ 404.1520a(b)-(c). The four broad areas are: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3); *see also* Listings 12.00E. The rating scale is: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4); *see also* Listings 12.00F.

Listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) each contain three paragraphs, designated A, B, and C. Paragraph A includes the medical criteria that must be present in the medical evidence. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 (Mental Disorders)(A)(2)(a). Paragraph B lists the functional criteria used to evaluate the degree to which mental impairment(s) affect the four areas of mental functioning and the ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 (Mental Disorders)(A)(2)(b). To satisfy the paragraph B criteria, a mental impairment must result in one "extreme" limitation, or "marked" limitation in two of the four areas of mental functioning. *Id.* Paragraph C describes the criteria used to evaluate serious and persistent mental disorders. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 (Mental Disorders)(A)(2)(c). To satisfy the paragraph C criteria, there must be a medically documented history of the existence of the disorder over a period of at least two years and evidence that satisfies the criteria in both C1 and C2 (set forth in Listing 12.00G). *Id.* To meet these listings, a claimant must demonstrate that

her mental disorder satisfies the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 (Mental Disorders)(A)(2).

### 2. Discussion

Plaintiff argues that the ALJ improperly determined that her severe impairments do not meet or equal Listings 12.04 or 12.06.[2] (JS at 7.) In particular, Plaintiff contends that the ALJ failed to properly consider Dr. Peterson's medical report. (JS at 7-11.) The Commissioner argues that the ALJ's finding that Plaintiff's impairments did not meet the marked or extreme limitations that are required under the Listings is supported by substantial evidence. (JS at 11-14.) The Court agrees with the Commissioner.

In determining that the severity of Plaintiff's mental impairments does not meet or medically equal the criteria for Listings 12.04 and 12.06, the ALJ considered Plaintiff's Representative's Brief. (AR 19, 277-78.) The ALJ also considered evidence from Dr. Fera (AR 471,864), evidence from Dr. Peterson (AR 709), state agency reports (AR 74, 91), various mental status exams (AR 336, 340, 461), a third-party functional report (AR 260), and Plaintiff's own self-reported symptoms (AR 231, 233-34, 236-37). (AR 19-20.)

The ALJ determined that Plaintiff had not satisfied either the paragraph B requirements or the paragraph C requirements for both listings.[3] (AR 19-2.) In

---

[2] Plaintiff also argues that the Court must remand for further proceedings requiring the ALJ to reevaluate Plaintiff's disability at step three under the correct version of the Listings. (JS at 11.) However, Plaintiff does not present any actual argument concerning use of the incorrect Listing requirements, identify any errors, or include any citations to the record. Thus, no such argument has been properly presented. *See Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address challenge to ALJ's finding when claimant failed to argue the issue with any specificity"); see also *Nazarian v. Berryhill*, No. CV 17-1114 JC, 2018 WL 2938581, at *3 (C.D. Cal. June 7, 2018) (collecting cases).

[3] The ALJ did not address whether Plaintiff satisfied the paragraph A requirements. In the Joint Stipulation, Plaintiff provides citations to the record that support a

evaluating the paragraph B criteria for both listings, the ALJ found Plaintiff has a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing herself. (AR 19-20.) The ALJ concluded that because Plaintiff's impairments do not cause at least two marked limitations or one extreme limitation, the paragraph B criteria are not met. (AR 20.) In considering whether the paragraph C criteria for both listings are satisfied, the ALJ found that there is insufficient evidence to meet or equal the requirements. (AR 20.)

Plaintiff's argument that Dr. Peterson assessed Plaintiff with 17 marked or extreme limitations is unavailing. The sections in Dr. Peterson's report that Plaintiff relies on contain Plaintiff's self-reported symptoms. (AR 711-14.) Dr. Peterson specifically begins each impairment section with "[t]he applicant says" or "[t]he applicant rates." (*Id.*) By contrast, Dr. Peterson assessed Plaintiff with a GAF score of 62, and restricted Plaintiff to "not [having] direct contact with the coworker whose allegations prompted an investigation into the [Plaintiff's] workplace behavior." (AR 724-25.) Based on its review of the record, the Court determines that Dr. Peterson did not rate Plaintiff's mental impairments as "extreme, marked, moderate, mild, or none" but rather described Plaintiff's self-reported symptoms.

Plaintiff's self-reported symptoms on their own cannot support a finding that Plaintiff's mental impairments meet or equal a Listing. The Listings specify the objective medical evidence needed to satisfy the criteria. 20 C.F.R. § 404.1525(c)(3); *cf. Kennedy*, 738 F.3d at 1176 ("[F]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is

---

finding that Plaintiff meets the paragraph A requirements for Listings 12.04 and 12.06, but the Commissioner does not address these requirements. (JS at 10.) The Court need not reach the issue whether Plaintiff satisfied the requirements of paragraph A for the reasons discussed below.

'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." (citation omitted). Plaintiff does not identify any objective medical evidence or medical opinions that support a finding that Plaintiff met or equaled Listings 12.04 or 12.06.

The Court finds that substantial evidence supports the ALJ's determination at step three that Plaintiff's impairments, or combination of impairments, do not meet or medically equal the severity of one of the Listings.

### B. The ALJ Properly Evaluated the Medical Opinions

#### 1. Applicable Legal Standards

For claims filed on or after March 27, 2017, the former hierarchy of medical opinions based on the extent of a doctor's relationship with a claimant no longer applies. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "An ALJ reviews every medical opinion for 'supportability' and 'consistency'." *Reynolds v. Kijakazi*, 2022 WL 4095381, at *1 (9th Cir. Sept. 7, 2022) (citing *Woods*, 32 F.4th at 791-92); 20 C.F.R. § 416.920c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence. 20 C.F.R. § 416.920c(c)(1); *see Woods*, 32 F.4th at 791-92. Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 416.920c(c)(2); *see Woods*, 32 F.4th at 792. The ALJ will also consider other factors: relationship with the claimant; specialization; and other factors that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1520c(a), (c).

#### 2. Discussion

Plaintiff argues that the ALJ did not follow the new regulations when analyzing the medical opinions in the record. (JS at 17.) The Commissioner contends that Plaintiff fails to identify any harmful legal error in the ALJ's evaluation of the medical opinion evidence. (JS at 19.) The Court agrees with the Commissioner.

The ALJ considered the opinions of Dr. Peterson and Dr. Fera, along with opinions of the state psychological consultants. (AR 25.)

The ALJ found the opinion of Dr. Fera unpersuasive. (AR 25.) The ALJ noted Dr. Fera's opinion that Plaintiff had a marked limitation in her ability to carry out complex instruction, marked limitations in interacting appropriately with supervisors, marked limitations in the ability to interact appropriately with co-workers, and extreme limitations in the ability to respond appropriately to usual work situations and changes in a routine setting. (AR 25, 889-90.) However, the ALJ determined these limitations were overstated—inconsistent or unsupportable—given Plaintiff's general mental status examinations and self-reported daily activities. (AR 25.)

The ALJ considered Plaintiff's March 2018 mental status examinations that showed cooperative behavior, normal speech, normal cognition, intact alertness, intact and normal memory, fair insight, fair and normal judgment, intact concentration, coherent thought form, euthymic, depressed, and anxious mood, and appropriate affect. (AR 22-23, 336, 339-40.) In June 2018, Plaintiff's mental status examination reflected cooperative behavior, coherent thought form, euthymic mood, and an appropriate affect. (AR 23, 322-23.) Dr. Fera's examination from July 2018 reported that Plaintiff drove herself to the appointment, had social appropriateness, was serious with saddened facial appearance, was highly guarded, had good receptive and expressive language, had no behavioral impairment, had fair eye contact, was angry at times, had intact memory, and had no problems with judgment or insight. (AR 23, 461.) In August 2018, Plaintiff showed attentive and cooperative behavior, normal speech, no psychomotor abnormalities, anxious mood and affect, linear and logical thought process, and limited insight and judgment. (AR 23, 716.) Dr. Peterson also reported Plaintiff was able to immediately register three out of three items, three out of three items after five minutes, and was able to perform serial sevens. (*Id.*) In February 2020, Dr. Fera reported Plaintiff had

social withdrawal, paranoia, low autonomy, psychomotor agitation, attention diversion due to chronic pain, poor focus associated with clinical depression and anxiety, and low motivation. (AR 23, 865.) The ALJ also noted Dr. Fera's observation that Plaintiff had poor sleep with fatigue that negatively affected her overall energy, short-term memory, and concentration to task. (*Id.*) In May 2020, Dr. Fera reported similar observations. (AR 23, 472.)

Regarding Plaintiff's daily activities, the ALJ considered Plaintiff's testimony that she cared for a one-year-old baby eight hours per day, five days a week. (AR 24, 48-49.) The ALJ also considered Plaintiff's testimony that she prepares food for her children and toddler, plays with the toddler, does three loads of laundry a week, shops with her children, and exercises twice a week for an hour and a half. (AR 24, 49-50, 338.) The ALJ found that these activities require some degree of mental functioning and are inconsistent with Plaintiff's alleged limitations. (AR 24.) The ALJ appropriately found that Dr. Fera's opinion that Plaintiff experienced marked and extreme limitations was inconsistent with the substantial evidence showing Plaintiff's generally normal mental status examinations and daily activities. *See Woods*, 32 F.4th at 792 (holding that an ALJ can reject a doctor's opinion as unsupported or inconsistent if the ALJ provides an explanation supported by substantial evidence); *Smartt v. Kijakazi*, 53 F.4th 489, 495-96 (9th Cir. 2022) (finding no error in discounting physician's opinion because the ALJ identified specific and legitimate inconsistencies supported by substantial evidence). The Court finds the ALJ's evaluation of Dr. Fera's opinion is supported by substantial evidence and consistent with the new regulations required for weighing medical opinion evidence.

Next, the ALJ found the opinion of Dr. Peterson only somewhat persuasive. (AR 25.) Dr. Peterson opined that Plaintiff displays symptoms consistent with a major depressive disorder diagnosis. (AR 721.) Dr. Peterson observed that Plaintiff's symptoms included depression, anhedonia, fatigue, insomnia, appetite

changes, feelings of worthlessness, problems with memory, difficulty concentrating, and difficulty thinking clearly. (*Id.*) Dr. Peterson did not diagnose a separate anxiety disorder because Plaintiff's symptoms of anxiety "occur exclusively with depression." (*Id.*) Dr. Peterson also assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 62, meaning Plaintiff has "[s]ome mild symptoms . . . [or] some difficultly in social, occupational, or school functions . . . but generally [functions] pretty well, [and] has some meaningful interpersonal relationships." (AR 722-23.) Ultimately, Dr. Peterson diagnosed Plaintiff as temporarily disabled on a psychiatric basis and restricted Plaintiff to "not [having] direct contact with the coworker whose allegations prompted an investigation into the [Plaintiff's] workplace behavior." (AR 724-25.)

An ALJ must articulate how persuasive the medical opinions are and consider the supportability and consistency factors. *Woods*, 32 F.4th at 791-92 (citations omitted). Here, the ALJ assessed a more restrictive RFC than the one Dr. Peterson opined Plaintiff should have. (AR 25.) The ALJ reached this determination based on Plaintiff's history of depression and anxiety and based on consideration of her subjective complaints. (*Id.*); *see Johnson v. Kijakazi,* No. 21-35755, 2022 WL 3998572, at *1 (9th Cir. Sept. 1, 2022) (affirming the ALJ's finding that physician's marked mental limitation opinion was not supported by, or consistent with, other record evidence). The Court finds the ALJ properly evaluated Dr. Peterson's opinion.

Lastly, the ALJ found the state psychological consultants' opinions to be persuasive because the opinions are "consistent with the record as a whole, including the [Plaintiff's] history of depression and anxiety with generally normal mental status examination[s] and the [Plaintiff's] self-reported activities of daily living." (AR 25.) Considering the standard established in *Woods*, the ALJ properly considered the state agency consultants' opinions and articulated how the opinions are consistent with the evidence of Plaintiff's mental status examinations and daily

activities. *See Woods*, 32 F.4th at 791-92.

Plaintiff contends the opposite—that Dr. Peterson's and Dr. Fera's opinions are consistent with the record as a whole and the state agency consultants' opinions are inconsistent—but only broadly cites to the record in support (*see* AR 860-91, 706-42). (JS at 18.) Plaintiff also contends the Dr. Fera and Dr. Peterson both found marked limitations in similar areas of functioning. (JS at 18.) Although Plaintiff identifies Dr. Fera's report regarding Plaintiff's limitations (*see* AR 881-91), Plaintiff does not identify where Dr. Peterson reported the same limitation. Lastly, Plaintiff's contention that Dr. Fera and Dr. Peterson have better insight into Plaintiff's disability because they examined and treated Plaintiff is without merit. (JS at 19.) As already noted, the new regulations did away with the former hierarchy of medical opinions. *Woods*, 32 F.4th at 787. While the ALJ may consider relationship factors, the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c (a), (c). The Court concludes that the ALJ properly evaluated the medical opinions related to Plaintiff's mental health impairments, and the ALJ's evaluation is supported by substantial evidence.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 28, 2022

/s/
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**